**Marjorie WOLLOCH, Appellant,**

v.

**Robert AIKEN, M.D., Michelle Meltzer, M.D., Richard Keohane, M.D., Pennsylvania Hospital, Thomas Jefferson Hospital, Appellees. (Five cases).**

Superior Court of Pennsylvania.

Argued Jan. 12, 1999.

Filed March 10, 2000.

Reargument denied May 8, 2000.

---

tion of powers doctrine); *United States v. Horn*, 29 F.3d 754, 767 (1 st Cir.1994) ("the doctrines of sovereign immunity and supervisory power, each formidable in its own right, are in unavoidable tension").

5. *See, e.g., Commonwealth v. Pittman*, 515 Pa. 272, 276, 528 A.2d 138, 141 (1987) (declining to resolve constitutional issue where alternative disposition exists); *see also Spallone v.*

*United States*, 493 U.S. 265, 274, 110 S.Ct. 625, 631, 107 L.Ed.2d 644 (1990) (declining to consider constitutional and legislative immunity challenge to a court's contempt order where the order arose from "an abuse of discretion under traditional equitable principles"); *Armstrong v. Executive Office,* 1 F.3d 1274, 1290 n. 13 (D.C.Cir.1993) (same).

Benedict A. Casey, Philadelphia, for appellant.

Allan H. Starr, Philadelphia, for Robert Aiken, M.D., appellee.

Roseann L. Brenner, Philadelphia, for Michelle Meltzer, M.D., appellee.

James P. Kilcoyne, Jr., Plymouth Meeting, for Richard Keohane, M.D., appellee.

Leah B. Perry, Philadelphia, for Pennsylvania Hospital, appellee.

Michael D. Brophy, Philadelphia, for Thomas Jefferson Hospital, appellee.

Before KELLY, MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

KELLY, J.:

¶ 1 Appellant, Marjorie Wolloch, has appealed from each of the five orders entering summary judgment in favor of Appellees, Robert Aiken, M.D., Michelle Meltzer, M.D., Richard Keohane, M.D., Pennsylvania Hospital, and Thomas Jefferson Hospital, in Appellant's medical malpractice case. Specifically, Appellant asks us to determine whether the trial court abused its discretion in granting Appellees' motions for summary judgment. Following our review of the record in light of applicable law, we affirm summary judgment in favor of Appellees Keohane, Pennsylvania Hospital and Thomas Jefferson Hospital; we reverse the judgments in favor of Appellees Aiken and Meltzer, and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this case as gleaned from the certified record on appeal are as follows. On or about June 4, 1992, Appellant came under the medical care of Appellee Meltzer, complaining of intermittent throbbing pain in her left lower back with intermittent radiation of the pain down her left leg and ankle. Appellee Meltzer ordered a

* Retired Justice assigned to the Superior Court.

cervical spine film, due to Appellant's complaints of arm numbness, and a spine series. The films were taken at Pennsylvania Hospital and read by Appellee Keohane. The films were read as normal. Appellant was prescribed pain medications. Appellant continued under Appellee Meltzer's care for only three weeks.

¶ 3 On or about June 24, 1992, Appellant consulted Appellee Aiken at Thomas Jefferson Hospital for complaints of intense discomfort relating to her left leg and ankle. Appellee Aiken diagnosed Appellant's condition as lumbar radiculopathy and recommended pain medication, Naprosyn, heat, massage, and ultrasound. By September 1992, Appellant's condition appeared to be improving on the Naprosyn and physical therapy regimen. On October 21, 1992, Appellee Aiken ordered a MRI of Appellant's left spinal canal. The MRI indicated a minimal bulging at L4–5. Appellee Aiken referred Appellant to the Jefferson Pain Clinic for nerve block injections. Soon thereafter, Appellant began to experience radicular pain of increased and constant intensity. Appellant was treated with epidural steroids through December 1992. Appellant continued under Appellee Aiken's care until January 1993.

¶ 4 On January 26, 1993, Appellant underwent a radiographic film of her left hip. The next day, Appellant was admitted to the hospital with severe back and left leg pain and a fever of 102 degrees. X-rays showed a probable lesion. Appellant's CT scan indicated a large mass, which arose in the left ilium and extended from the iliac joint to invade the sacrum. There was also some indication of pulmonary metastases. A bone scan indicated destruction of the left sacrum, left sacroiliac joint and medial portion of the ilium. A biopsy showed osteosarcoma. Her pelvic MRI showed a large mass arising in the left iliac bone, displacing local muscles, and extending into the abdominal cavity.

¶ 5 Appellant underwent a program of aggressive chemotherapy and related treatment until July 1993. She was referred to UCLA Medical Center for a left hemipelvectomy and extensive related surgery, with post-operative chemotherapy recommended. Following her August 1993 stay at UCLA Medical Center, Appellant was admitted to Magee Rehabilitation Hospital in Philadelphia on September 3, 1993. Appellant continued a rigorous course of post-operative and rehabilitative treatment throughout 1994. By December 1994, Appellant's test results indicated no evidence of recurrence, and her March 1995 films showed no metastases as of that date.

¶ 6 Appellant commenced this action by Writ of Summons on May 31, 1994. She filed her Complaint on June 25, 1994. In her Complaint, Appellant claimed that her treatment by all Appellees fell below the proper standard of medical care. As a result of Appellees' failure to recognize Appellant's symptoms and to diagnosis her condition, Appellant alleged, her diagnosis and treatment for cancer were inappropriately delayed, allowing her tumor to grow and causing Appellant increased pain and suffering, permanent disability, and other losses.

¶ 7 Appellees promptly filed preliminary objections to Appellant's Complaint. The court overruled Appellees' respective preliminary objections. Appellees' Answers to Appellant's Complaint were duly filed by January 1995. Discovery proceeded without incident by the parties' voluntary and cooperative exchange of information through interrogatories, requests for production of documents, and depositions. Appellee Meltzer's deposition was the last, taken in November 1997.

¶ 8 Appellant's case came under the purview of the Philadelphia County Court of Common Pleas' Day Backward Program,[2]

2. The Philadelphia County Court of Common Pleas Day Backward Programs, and the successor Day Forward Programs, are case management programs designed to reduce the Philadelphia trial court's backlog of untried cases by setting definite pretrial deadlines and

as determined by the court term during which the Complaint had been filed. The case was listed for a case management conference, which was held on April 10, 1997. The case management order listed the case on the complex track, adopting the complex track time standards for discovery and other pretrial deadlines. According to that order, Appellant was required to identify her medical expert and to provide an expert report and curriculum vitae no later than February 2, 1998. Appellees were to provide their expert information no later than April 6, 1998. As well, the case management order required all pretrial motions to be filed by April 6, 1998. Settlement memos were due by May 4, 1998; pretrial memos were due by May 18, 1998. The parties were directed to be ready for trial by August 3, 1998.

¶ 9 Shortly before Appellant's expert witness deadline of February 2, 1998, Appellant's counsel filed an unopposed Petition for Extraordinary Relief to extend the case management deadlines for thirty days.[3] By order of the case management judge, Appellant's Petition was granted and her expert witness deadline was extended to March 2, 1998. Appellees' expert deadline was also extended thirty days, to May 6, 1998.

¶ 10 March 2, 1998 came and went without submission of Appellant's expert report(s) and/or curriculum vitae. Further, Appellant did not file a timely second Petition for Extraordinary Relief before March 2, 1998, by which she might have obtained

another extension of the expert witness deadline. Accordingly, Appellee Aiken filed a motion for summary judgment on March 10, 1998, followed by motions for summary judgment on behalf of Appellee Pennsylvania Hospital, filed on March 17, 1998; Appellee Thomas Jefferson Hospital, filed on March 18, 1998; Appellee Keohane, filed on March 19, 1998; and, Appellee Meltzer, filed on March 20, 1998. The thrust of Appellees' motions was that Appellant had failed to submit timely expert report(s) delineating the applicable standard of care; stating how Appellees had deviated from the acceptable standard of care; and, with the proper degree of medical certainty, that their deviation caused or contributed to Appellant's alleged harm. Without an expert report, Appellees contended, Appellant could not make out a *prima facie* case of medical malpractice.

¶ 11 In response, Appellant challenged only the motions for summary judgment of Appellees Aiken and Meltzer on April 13 and April 15, 1998, respectively. The gist of Appellant's opposition was the alleged difficulty in obtaining an appropriate expert to review Appellant's extensive treatment records. Appellant again requested an additional thirty days to supply the expert reports, admitting that counsel had seriously underestimated the time required to obtain the reports.

¶ 12 Importantly, in her answers in opposition to the motions for summary judgment filed by Appellees' Aiken and Melt-

---

trial dates. Prior to the institution of these programs, the First Judicial District had been plagued with poorly defined trial pools and unpredictable trial dates that allowed cases to languish in the court system and defeat closure at the will of either party. The programs helped to create a level playing field for the parties while promoting efficient court proceedings. The discovery cut-off dates are intended to move the cases along and protect against trial by ambush. As a whole, these programs have been viewed as a boon to plaintiffs. The team leader or trial judge retains certain discretion in enforcing these deadlines. *See, e.g., Zito v. Merit Outlet Stores*, 436 Pa.Super. 213, 647 A.2d 573

(1994) (affirming trial court's imposition of financial sanctions for cost of delay against party requesting one-half day recess of trial to permit taking of expert's video deposition). In other words, the trial court is not obligated to dismiss a case or preclude evidence for failure to adhere to the deadlines prescribed in the case management order.

3. The Philadelphia County case management program requires the parties to file all Petitions for Extraordinary Relief, requesting extensions of the deadlines prescribed in the case management orders, **before** the expiration date of the applicable deadline.

zer, Appellant explicitly stated that she did not intend to respond to the motions for summary judgment filed by Appellees Keohane, Pennsylvania Hospital and Thomas Jefferson Hospital. On April 14, 1998, Appellant also filed copies of her letters to counsel for these Appellees, advising the court that Appellant was not opposing the summary judgment motions of Appellee Keohane and the two hospitals. At no time in this flurry of dispositive motions did any party question the fundamental necessity of an expert opinion to support Appellant's case.

¶ 13 On April 29, 1998, the trial court entered five orders granting summary judgment in favor of each Appellee, thereby disposing of Appellant's case. On May 4 and May 14, 1998, however, counsel for Appellant forwarded to Appellees' counsel copies of two reports by Appellant's expert, Richard S. Goodman, M.D. and a copy of his *curriculum vitae*. On May 20, 1998, Appellant's counsel also forwarded to Appellees' counsel a copy of the report of another expert, Donna Glover, M.D., along with a copy of her *curriculum vitae*.

¶ 14 On May 21, 1998, Appellant filed a motion with the trial court to vacate **all** five summary judgment orders. Attached to her motion to vacate were copies of the expert reports and *curriculum vitae* previously forwarded to Appellees. In the motion to vacate, counsel for Appellant admitted that efforts to secure appropriate experts were first made in September 1997. Counsel claimed that the "enormous quantity of records requiring review" as well as the difficulty in obtaining experts who could review Appellant's clinical records and render an informed opinion, had seriously hampered their efforts. Counsel also complained that, on March

24, 1995, the original x-ray films from June 5, 1992 had to be returned to Pennsylvania Hospital and that Appellant had only copies of the films to submit to the expert for review. Counsel asserted that there had been no willful disregard of the discovery deadlines or prejudice to Appellees caused by the delay in providing Appellant's experts' reports. Counsel further stated that he had not received the court's order granting his initial request for Extraordinary Relief until March 10, 1998, which was too late to file a timely second request for Extraordinary Relief from the March 2, 1998 deadline. Accordingly, Appellant asked the trial court to reconsider/vacate its summary judgment orders and to issue a new case management order. Realizing that the trial court would not address the motion for reconsideration until after Appellees had thirty days to respond, on May 22, 1998, Appellant filed appeals from the five orders granting summary judgment in favor of all Appellees.

¶ 15 In their answers in opposition to Appellant's motions to vacate, Appellees principally argued that the trial court no longer had jurisdiction to grant Appellant's motion to vacate, because the court had not expressly granted reconsideration of its April 29, 1998 orders within thirty days of the date of the orders.[4] They also contended that Appellant had misrepresented the nature of her discovery violations, in that she had violated not one but two orders of the court, and had missed not one but two deadlines. Appellees stated that they had complied with Appellant's discovery requests and/or submitted to depositions. Appellees maintained that Appellant had been given ample time and

---

4. *See Cheathem v. Temple University Hosp.,* 743 A.2d 518, 520 (Pa.Super.1999) (reiterating well settled rule that, regarding final orders, thirty-day appeal period is tolled only by order expressly granting reconsideration within thirty days of entry of final order; any other order is inadequate to stay appeal); *Mente Chevrolet, Oldsmobile, Inc. v. Swoyer,* 710 A.2d 632 (Pa.Super.1998) (stating that in situations involving final orders, best procedure for party seeking reconsideration of final order is to file motion for reconsideration and notice of appeal; if reconsideration is granted within thirty days of final order, appeal becomes inoperative; if reconsideration is denied [expressly or by passage of thirty-day period for appeal], appellate rights have been preserved).

information to secure a proper expert and to submit a timely report, at least by the extended deadline of March 2, 1998. Appellees concluded that Appellant's failure to proceed with due diligence in the face of the court's deadlines, and despite extended opportunity, was inexcusable, willful, prejudicial, and warranted dismissal of her case.

¶ 16 Appellees Keohane, Pennsylvania Hospital and Thomas Jefferson Hospital also took the position that Appellant had expressly acquiesced to summary judgment in their favor by stating on the record that she did not intend to oppose their motions. These Appellees concluded, therefore, that Appellant was bound by her prior position and was now estopped from challenging the orders entering summary judgment in their favor.

¶ 17 By order dated July 2, 1998, the court declared that it no longer had jurisdiction to entertain Appellant's motions to vacate and denied Appellant's motion. An appeal from the trial court's denial of the motion to vacate was subsequently filed but later quashed, *sua sponte,* by this Court. The present appeals, however, are properly before this Court.

¶ 18 On appeal, Appellant raises the following issue for our review:

> WAS THE GRANT OF SUMMARY JUDGMENT FOR ALL [APPELLEES] AND REFUSAL OF [APPELLANT]'S REQUEST FOR THIRTY (30) ADDITIONAL DAYS WITHIN WHICH TO SUPPLY EXPERT REPORTS AN ABUSE OF DISCRETION WHERE THERE WAS NO EVIDENCE AND NO FINDING BY THE TRIAL COURT OF WILLFULNESS BY [APPELLANT] OR PREJUDICE TO [APPELLEES]?

(Appellant's Brief at 2).

¶ 19 Summary judgment is governed by the Pennsylvania Rules of Civil Procedure as follows:

**RULE 1035.2 MOTION**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa. R.C.P. 1035.2 *Note.* Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action. If the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. The non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party. As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence of a triable issue.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate Court applies the same standard for summary judgment as the trial court.

*McCarthy v. Dan Lepore & Sons Co., Inc. et al.*, 724 A.2d 938, 940–41 (Pa.Super.1998), *appeal denied*, 559 Pa. 692, 743 A.2d 921 (1999) (internal citations omitted). *See also Moses v. T.N.T. Red Star*, 725 A.2d 792 (Pa.Super.1999), *appeal denied*, 559 Pa. 692, 739 A.2d 1058 (1999). Further, Rule 1035.3 provides in pertinent part:

### RULE 1035.3 RESPONSE. JUDGMENT FOR FAILURE TO RESPOND

**(a)** The adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion . . . , or

\*　　\*　　\*

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

**(b)** An adverse party **may supplement the record or set forth the reasons why the party cannot present evidence to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.**

**(c)** The court may rule upon the motion for judgment **or** permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such order as is just.

**(d) Summary judgment may be entered against a party who does not respond.**

Pa.R.C.P. 1035.3 (emphasis added). The rule allows the non-moving party to supplement the record or set forth reasons why that party cannot present the evidence essential to justify opposition to the motion as well as any action intended to be taken by the party to present the evidence. Pa.R.C.P. 1035.3(b). Thereafter, the court may rule on the motion or allow more discovery or make such order as is just. Pa.R.C.P. 1035.3(c). The rule also permits entry of judgment for failure to respond to the motion, but does not require it. Pa.R.C.P. 1035.3(d); Pa.R.C.P. 1035.1 Explanatory Comment–1996.

■ ¶ 20 The rules on summary judgment are replete with discretionary power. Nevertheless, the exercise of judicial discretion requires:

action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. An abuse of discretion is not merely an error of judgment. Rather, the trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Eaddy v. Hamaty*, 694 A.2d 639, 643 (Pa.Super.1997) (internal citations omitted).

¶ 21 Appellant argues that the orders granting summary judgment in favor of Appellees were based solely on Appellant's failure to meet the Day Backward discovery deadline for expert reports. Appellant characterizes the court's orders as discovery sanctions. Appellant further contends that the entry of summary judgment constituted the severest of sanctions, because her case was dismissed. Appellant maintains that the sanctions were imposed without any evidence or findings of willful-

ness on Appellant's part or prejudice to Appellees. Appellant also claims that the trial court abused its discretion by simply ruling on the motions, despite the assertions in her answers of extenuating circumstances and her request for additional time to supplement the record and provide the reports. Appellant concludes that the court's action constitutes essentially a failure to follow legal procedure. With respect to Appellees Aiken and Meltzer, we agree. Therefore, we cannot affirm the two orders granting summary judgment in their favor.

■ ¶ 22 To review the propriety of the court's decision, we first consult the general rules regarding discovery sanctions, particularly where the discovery violation is a failure to identify an expert witness and the effect of the sanction is dismissal of the action through summary judgment. Pursuant to Rule 4019 of the Pennsylvania Rules of Civil Procedure, a trial court may "make an appropriate order" if a party "fails to make discovery or to obey an order of the court respecting discovery." Pa.R.C.P. 4019(a)(1)(viii). The decision to sanction a party and the severity of the sanction is a matter vested in the discretion of the trial court. *Croydon Plastics v. Lower Bucks Cooling & Heating*, 698 A.2d 625 (Pa.Super.1997), *appeal denied*, 553 Pa. 689, 717 A.2d 1028 (1998).

■ ¶ 23 Dismissal of an action as a discovery sanction is permissible under Rule 4019. *Stewart v. Rossi*, 452 Pa.Super. 120, 681 A.2d 214 (1996), *appeal denied*, 547 Pa. 731, 689 A.2d 235 (1997). Because dismissal is the most severe sanction, however, "it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Id.* at 217. Therefore, heightened review of a sanctions order is appropriate when the practical effect of the order is dismissal of the sanctioned party's case [or defense]. *Croydon, supra; Steinfurth v. LaManna*,

404 Pa.Super. 384, 590 A.2d 1286 (1991) (observing that dismissal of malpractice action as result of grant of summary judgment based on appellant's failure to present expert testimony to establish doctor's care fell below applicable standard of care is subject to strict scrutiny and should be imposed only in extreme circumstances).

■ ¶ 24 Rule 4003.5 governs the disclosure of an expert's facts and opinions otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 664 A.2d 525 (1995). If the identity of an expert witness is not disclosed, Rule 4003.5 also authorizes sanctions, such as preclusion of the proposed expert's testimony. Pa.R.C.P. 4003.5(b). We note, however, that in *Feingold v. Southeastern Pennsylvania Transp. Authority*, 512 Pa. 567, 517 A.2d 1270 (1986), our Supreme Court specifically abandoned the concept of mandatory preclusion in this context, holding that Rule 4003.5 requires the trial court to balance carefully the facts and circumstances of the case to determine the prejudice to each party caused by the discovery violation. *Id.* at 573, 517 A.2d at 1273. The multi-factor approach espoused in *Feingold* involves several basic considerations:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling [undisclosed] witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and, (4) bad faith [or] willfulness in failing to comply with the court's order.

*Id.* at 574, 517 A.2d at 1273. *See also Luszczynski v. Bradley*, 729 A.2d 83 (Pa.Super.1999), *appeal withdrawn*, 559 Pa. 692, 739 A.2d 1058 (1999) (adding consideration of importance of precluded evidence in light of failure to comply); *Steinfurth, supra* (applying *Feingold* analysis to

discovery sanction imposed under Rule 4019). In balancing these factors as they relate to each party, the court must examine the relative prejudice, which cannot be presumed. *See Kearns by Kearns v. De-Haas,* 377 Pa.Super. 200, 546 A.2d 1226 (1988), *appeal denied,* 522 Pa. 584, 559 A.2d 527 (1989) (stating that complaining party must demonstrate prejudice to proper preparation of case for trial as result of dilatory disclosure). *See also Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 521 A.2d 451 (1987) and *Linker v. Churnetski Transp., Inc.,* 360 Pa.Super. 366, 520 A.2d 502 (1987), *appeal denied,* 516 Pa. 641, 533 A.2d 713 (1987) (illustrating requisite proof of prejudice).

¶ 25 Pennsylvania law makes clear that "local rules cannot be construed as to be inconsistent with state rules." *Harris v. Hospital of University of Pennsylvania,* 744 A.2d 769, 1999 PA Super 340 (*en banc*) (quoting *Feingold, supra* at 572, 517 A.2d at 1272). *See also* Pa.R.C.P. 239(b)(1) (stating that local rules shall not be inconsistent with any general rule of the Supreme Court or Act of Assembly). Our Supreme Court has explained:

The trial of a lawsuit is not a sporting event where the substantive legal issues which precipitated the action are subordinate to the "rules of the game." A lawsuit is a judicial process calculated to resolve legal disputes in an orderly and fair fashion. It is imperative that the fairness of the method by which the resolution is reached not be open to question. A rule which arbitrarily and automatically requires the termination of the action in favor of one party and against the other based upon a procedural misstep, without regard to the substantive merits and without regard to the reason for the slip, is inconsistent with the requirement of fairness demanded by the Pennsylvania Rules of Civil Procedure. Rule 126 is not a judicial recommendation which a court may opt to recognize or ignore. Rather the rule is a statement of the requirement of

fairness and established an affirmative duty courts are bound to follow in applying all procedural rules whether they be statewide or local in origin.

*Byard F. Brogan v. Holmes Elec. Protective Co. of Philadelphia,* 501 Pa. 234, 240, 460 A.2d 1093, 1096 (1983). The *Brogan* Court recognized that a mandatory, harsh and inflexible application of a rule that requires termination of an action is an abuse of discretion, where the court enforces the rule without determining whether "an obvious injustice was done to the complaining party and if so, was the reason given for the noncompliance more than the mere inadvertence of counsel." *Id.* at 241, 460 A.2d at 1096–97.

¶ 26 Although courts have the power to formulate local rules of practice and procedure, local rules cannot abridge, enlarge or modify the substantive rights of a litigant. *Pennridge Elec., Inc. v. Souderton Area Joint School Authority,* 419 Pa.Super. 201, 615 A.2d 95 (1992). *See also McGratton v. Burke,* 449 Pa.Super. 597, 674 A.2d 1095 (1996), *appeal denied,* 546 Pa. 667, 685 A.2d 546 (1996) (holding invalid local rule prohibiting all post-arbitration discovery); *Everhardt v. Akerley,* 445 Pa.Super. 600, 665 A.2d 1283 (1995) (declaring invalid local rule that allowed for dismissal of exceptions to recommended support order for appellant's failure to file a brief at least fifteen days in advance of argument date); *Murphy v. Armstrong,* 424 Pa.Super. 424, 622 A.2d 992 (1993) (holding that sanction of dismissal for noncompliance of local rule is unauthorized).

¶ 27 We are also mindful that to state a cause of action for medical malpractice, Pennsylvania law requires plaintiff to establish the following:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct

result of that harm. Moreover, the patient must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.

*Eaddy, supra* at 642 (internal citations omitted). *See also Gregorio v. Zeluck*, 451 Pa.Super. 154, 678 A.2d 810 (1996), *appeal denied*, 546 Pa. 681, 686 A.2d 1311 (1996).[5] Addressing this standard as it applies to medical malpractice cases involving the failure to diagnose a disease, our Supreme Court has stated:

In many cases, this [standard of proof] is not a problem for a plaintiff. However, certain cases make this an impossible standard. These are cases in which, irrespective of the quality of the medical treatment, a certain percentage of patients will suffer harm.

An example of this type of case is a failure of a physician to [make a timely diagnosis]. Although timely detection of [a disease or medical condition] may well reduce the likelihood that the patient will have a terminal [or adverse] result, even with timely detection and optimal treatment, a certain percentage of patients unfortunately will succumb to the disease. This statistical factor, however, does not preclude a plaintiff from prevailing in a lawsuit. Rather, once there is testimony that there was a failure to detect the cancer in a timely fashion,

and such failure increased the risk that the [plaintiff] would have either a shortened life expectancy or suffered harm, then it is a question for the jury whether they believe, by a preponderance of the evidence, that the acts or omissions of the physician were a substantial factor in bringing about the harm.

*Mitzelfelt v. Kamrin*, 526 Pa. 54, 62–63, 584 A.2d 888, 892 (1990). Moreover, the expert need not testify with absolute certainty or rule out all other possible causes for the harm suffered by the patient. *Id.* The expert in these cases has been permitted to testify under the relaxed degree of certainty enunciated in Section 323(a) of the Restatement (Second) of Torts,[6] that the defendant's failure to exercise reasonable care in the diagnosis and treatment increased the risk of harm. *Id.* at 66–67, 584 A.2d at 894. *See also Smith v. Grab*, 705 A.2d 894 (Pa.Super.1997) (reiterating reduced standard of certainty applicable to cases involving failure to diagnose).

▮ ¶ 28 Although preferred, the expert is not necessarily required to use the "magic words" of "increased the risk," so long as the opinion is expressed to the requisite degree of medical certainty. *Mitzelfelt, supra.* The substance of the expert testimony is viewed in its entirety to determine whether it has expressed the appropriate standard of certainty. *Id.*

▮ ¶ 29 The instant case involves the interplay and balance of all these legal principles. We agree with Appellant that her case against Appellees Aiken and

---

5. *But see Hightower–Warren v. Silk, M.D.*, 548 Pa. 459, 698 A.2d 52 (1997) (holding that expert medical testimony is not required if matter is so simple or lack of skill or care is so obvious as to be within range of experience and comprehension of even lay persons). *See, e.g., Gregorio, supra* (presuming physician's failure to remove surgical gauze from patient following delivery and episiotomy is example of deviation from accepted medical standards that can be comprehended by lay person even without expert opinion provided).

6. Section 323 of the Restatement (Second) of Torts provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
    (a) his failure to exercise such care **increases the risk** of harm, or
    (b) the harm is suffered because of the other's reliance upon the undertaking.
Restatement (Second) of Torts Section 323 (emphasis added) (all pronouns intended as gender neutral).

Meltzer was dismissed by virtue of summary judgment without any application of the balancing factors enunciated in *Feingold, supra*; *Brogan, supra*; *Luszczynski, supra*; *Kearns, supra*.

¶ 30 Here, the parties engaged in discovery over the course of three years without incident. No party needed to request court intervention to compel compliance with discovery requests. This case does not involve ongoing dilatory, obdurate or vexatious discovery practices requiring court intervention, or any deliberate defiance of court orders compelling discovery responses. *See, e.g., Croydon, supra*; *Stewart, supra*.

¶ 31 Further, Appellant timely requested an extension of the court's case management deadline once it became apparent that her experts' reports would not be ready by February 2, 1998. Appellant's petition was unopposed. Although Appellant should have requested more time or, in the alternative, filed another petition for relief from the deadline as a precautionary measure, Appellant's answer to the motions for summary judgment of Appellees Aiken and Meltzer provided extenuating circumstances and put the court and counsel on notice that Appellant's expert reports were imminent. The failure to provide the expert reports by the new March 2, 1998 deadline was Appellant's first and only discovery violation.[7] The importance of the experts' reports to Appellant's case was undisputed whereas dismissal was a harsh enforcement of the case management deadline. Thus, we conclude that the court should have looked more carefully at the equities presented, particularly in the absence of any history of willful or bad faith failure to comply with the discovery deadlines. *See Feingold, supra*; *Brogan, supra*; *Luszczynski, supra*.

¶ 32 Additionally, the motions for summary judgment and responses were not filed on the eve of trial. Trial in this matter was still five months away and open to a request for continuance by any party. Further, Appellees had all of Appellant's medical records and plenty of time to prepare a response to Appellant's expert reports. Therefore, we conclude that Appellees' bare allegation of prejudice without a showing of prejudice in fact does not support dismissal of Appellant's case. *See Curran, supra*; *Kearns, supra*.

¶ 33 With respect to the remaining orders granting summary judgment in favor of Appellees Keohane, Pennsylvania Hospital and Thomas Jefferson Hospital, Appellant specified her intention not to oppose the motions in her answers in opposition to the motions filed by these Appellees. On April 14, 1998, Appellant also filed with the court copies of the letters to Appellees' counsel, advising the court that she would not oppose summary judgment in favor of Appellee Keohane and the two hospitals. Accordingly, these motions for summary judgment were entered unopposed as a matter of record and cannot now be assailed. *See* Pa.R.C.P. 1035.3(d).

¶ 34 Based upon the foregoing, we affirm the orders granting summary judgment in favor of Appellees Keohane, Pennsylvania Hospital and Jefferson Hospital. We reverse the orders granting summary judgment in favor of Appellees Aiken and Meltzer. We remand the matter to the trial court for further proceedings consistent with this opinion including, but not necessarily limited to, a consideration of Appellant's expert reports to determine whether they meet the requisite legal standard regarding Appellees Aiken and Meltzer.

¶ 35 Orders granting summary judgment affirmed in part and reversed in part; case remanded to the trial court for further proceedings. Jurisdiction is relinquished.

---

**7.** As a practical matter, we recognize that plaintiff and defense counsel alike exercise little control over their experts, whose reports are often tendered at the last minute regardless of the precarious position in which this practice places the parties.