**Betty MASGAI, Individually, and as Executrix of the Estate of William Masgai, Deceased, Appellant**

**v.**

**Howard J. FRANKLIN, M.D., Robin Rosenberg, M.D., Surgical Services, Ltd., Frankford Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 25, 2001.
Filed Nov. 14, 2001.

---

Barry W. Krengel, Philadelphia, for appellant.

Susan L. Fleming, Blue Bell, for appellee.

Before: HUDOCK, STEVENS, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Betty Masgai[1] appeals from the trial

---

**1.** Appellant's husband was originally a plaintiff in the lawsuit but passed away on July 14, 1998. *See* Trial Court Opinion, 1/3/01, at 3. Regarding the date on the opinion, the Hon-

court's order granting summary judgment in favor of appellees and dismissing her suit with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

[William Masgai ("Decedent")] [2] was 74 years old and had a pre-existing cirrhosis of the liver ailment when he was admitted to the emergency room of Frankford Hospital. Preceding admission to Frankford Hospital [Decedent] had a history of abdominal pain, back pain, and a fever. An abdominal CT scan was reported to show severe intra-abdominal disease, and based upon his complaints of pain and results of the scan, he underwent abdominal surgery. An exploratory laparotomy and cholecystectomy were performed by Dr. Franklin and Dr. Rosenberg utilizing a Hasson trocar. This procedure was described as putting the patient to sleep, and then making a small incision either above or below the belly button and using direct visualization to work directly in the abdominal cavity and under direct vision place a blunt trocar into the abdominal cavity. Upon insertion of the trocar, a hemoperitoneum was observed, with fresh blood and clots throughout the abdomen area. A large amount of blood was observed and most of the blood was thought to be coming from the liver. Blood was noted within the peritoneal cavity, and [Decedent] was found to have injury to the spleen and liver. The bleeding was controlled, and the gallbladder was removed. Post operative pathology studies confirmed a gangrenous cholecystitis of the gallbladder. Due to multiple complications [Decedent] was transferred to Hahne-

mann University Hospital on June 29, 1995, and remained there until August 21, 1995. During his admission at Hahnemann University Hospital, he had multiple medical problems. Following his release from Hahnemann University Hospital, [Decedent] was very limited in his activities until his death on July 14, 1998.

Trial Court Opinion, 1/3/01, at 2–3 (citations omitted).

On November 14, 1996, [appellant and Decedent] commenced a medical malpractice action by filing a complaint alleging that [appellees] failed to timely and approximately treat [Decedent's] laceration to his liver and spleen which [appellant] allege[d] was negligently caused by [appellees] during the insertion of a Hasson trocar for a laparoscopic cholecystectomy. In support of [their] claim, [appellant and Decedent] submitted the expert report of Dr. Parsi dated December 31, 1998. [Appellees] filed a Motion in Limine and sought a Frye Hearing to preclude [appellant's] expert report of Dr. Parsi. Th[e trial c]ourt granted the moving [appellees'] motion for a Frye Hearing on March 21, 2000 and [o]rdered that a hearing be held on April 19, 2000 to determine the scientific reliability of [appellant's] expert. The evidence submitted at the Frye Hearing included testimony of [appellees] and their experts. [Appellees] argued that it was impossible to have caused any injury to [Decedent] given the length of the "Ethicon Hasson canula or trocar" and the position of the port in relationship to the damage to the right lateral posterior area of the liver.

orable Allan L. Tereshko hand-dated it 12/28/00, while it is stamped 1/3/00 and docketed 1/3/01. It appears that the stamp is an error. We thus accept 1/3/01 as the official date of Judge Tereshko's opinion.

**2.** In his opinion, the trial judge uses "Plaintiff" to mean both Mrs. and Mr. Masgai. *See* Trial Court Opinion, 1/3/01, at 1–3. For clarity, we use "appellant" when referring to Mrs. Masgai and "Decedent" when referring to Mr. Masgai.

In response to [appellees'] argument, [appellant] contend[ed] that the lacerations to [Decedent's] liver and spleen were caused by insertion of the trocar. It [was] [appellant's] argument that 12 hours prior to the laparoscopic surgery, a CAT scan was performed which showed no evidence of bleeding or any signs of lacerations to [Decedent's] spleen and liver. However, after the insertion of the trocar device and during the procedure, it was shortly discovered thereafter that [Decedent's] liver and spleen were lacerated. Therefore, [appellant] conclude[d] that the aforementioned injuries had to be the result of the insertion of the trocar by [appellees]. Following oral arguments, th[e trial c]ourt ... ruled that [appellant's] expert report of Dr. Parsi was not admissible, his deposition was not admissible, and Dr. Parsi was precluded from testifying as an expert in th[e] case. Following th[e trial c]ourt's ruling excluding [appellant's] expert witness Dr. Parsi, [appellees] subsequently filed a Motion for Summary Judgment. The motion was granted on May 15, 2000 dismissing [appellant's] claim against all of the named [appellees]. [Appellant] filed a Notice of Appeal on June 13, 2000, appealing [the][o]rder granting [appellees'] Motion for Summary Judgment.

*Id.* at 1–2 (citations omitted). Appellant frames two issues for our review:

1. Did the trial court err in issuing an over-broad ruling precluding the admission of Dr. Parsi's Frÿe deposition in its entirety and the testimony of Dr. Parsi as an expert in the trial of this matter when neither [appellees'] Motion in Limine nor the oral argument raised any other issues with regard to the other four (4) enumerated pre and post surgical deviations from the standard of care?

\* \* \*

2. Did the trial court abuse its discretion in granting [appellees'] Motion for Summary Judgment, despite [appellant's] submission of the supplemental expert report of Dr. Leitman, pursuant to Pa.R.C.P. 1035.3(b), and [appellant's] establishment of a prima facie case of liability on the theory of res ipsa loquitur and four (4) pre and post surgical deviations in the standard of care?

Appellant's brief at 5.

■ ¶ 2 In order to establish a *prima facie* cause of action for medical malpractice, a plaintiff must demonstrate that "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were the direct result of that harm." *Billman v. Saylor,* 761 A.2d 1208, 1211–12 (Pa.Super.2000) (quoting *Eaddy v. Hamaty,* 694 A.2d 639, 642 (Pa.Super.1997)).

> [B]ecause "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson," a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action.

*Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 833 (Pa.Super.2000) (quoting *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1285 (1978)). Where a plaintiff fails to produce an expert in a situation requiring one, the court should grant a defendant's motion for summary judgment. *Id.* In this case, appellant attempted to present an expert, Dr. R.K. Parsi. After the trial judge determined that Dr. Parsi's testimony would not meet the standards in *Frÿe,* he granted appellees' motion for summary judgment despite appellant's attempt to introduce another expert's testimony. We must determine whether the court erred in

precluding Dr. Parsi's testimony and, if so, determine whether summary judgment was proper given the introduction of a new expert witness.

■ ¶ 3 Expert testimony will only be admissible when the scientific principle underlying the expert's opinion satisfies the test first set forth in *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923).

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field to which it belongs.

*Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395, 399 (1994). The *Frye* standard requires "general acceptance of reliability in the relevant scientific community." *Id.* at 400 n. 2.

¶ 4 This requirement guarantees that the most qualified individuals will essentially be the ones determining the "validity of a scientific method." *Thomas v. West Bend Co., Inc.*, 760 A.2d 1174, 1178 (Pa.Super.2000) (citation omitted), *appeal denied*, 781 A.2d 147, 2001 WL 501438 (Pa. May 11, 2001). As this Court further noted, the *Frye* test "protects [both] prosecution and defense" by ensuring that there will be a group of sufficiently skilled experts to analyze the validity of a scientific principle or theory put forth in a given case. *Id.* (citation omitted). "Since scientific proof may in some instances assume a posture of mystic infallibility in the eyes of a jury of laymen, the ability to produce rebuttal experts, equally conversant with the mechanics and methods of a particular technique, may prove to be essential." *Id.* (quoting *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277, 1282 (1977)).

■ ¶ 5 Dr. Parsi opined that Decedent's liver sustained an injury in surgery, but he could not determine the exact cause of the injury. *See* Dr. Parsi's Report at 8. Appellant argued that a device called a Hasson trocar must have caused the injury, because there is nothing else that could have. At the conclusion of the *Frye* hearing, the trial court noted,

> [Appellant's] [e]xpert failed to offer any explanation, either scientific or unscientific, as to how this injury might have occurred, given the known undisputed facts. [Appellant's] response seems to attempt to shift the burden to [appellees] by replying with a quasi 'res ipsa' theory by saying in effect, 'We really don't know how the injury occurred but he was fine before the operation so something must have happened during the operation, just get us to a jury[.]'

> \* \* \*

> Specifically, this Court found that Dr. Parsi['s] report did not establish that absent [appellees'] negligence, the injuries to plaintiff would not have occurred. Furthermore, Dr. Parsi failed to rule out possible non-negligent acts as the cause of [Decedent's] injuries. [Appellees] offered a well reasoned and medically supportable alternate explanation for the presence of a volume of blood at the initiation of the laparoscopic procedure.

Trial Court Opinion, 1/3/01, at 6–7. We agree with the trial court's characterization. Dr. Parsi could offer no explanation for his belief that the liver was injured during surgery. Further, appellant failed to show that Dr. Parsi's theory met the mandates of *Frye*. The court, therefore, correctly precluded testimony regarding that injury.

¶ 6 This does not end the matter, though, because the *Frye* hearing only addressed that theory of liability. During the hearing, the court defined the relevant portion of Dr. Parsi's opinion as the "last page of the report, not addressing the issue of the delay but No. 2: 'there was severe injury to the liver during the procedure with massive blood loss[;]' re. the liver injury was not properly treated." N.T. Frye Hearing, 4/19/00, at 5 (quoting Expert Report of R.K. Parsi, M.D., 12/31/98). Appellant's counsel agreed, "So [appellees' *Frye* issue is] really No. 2, Your Honor." *Id.* Appellees did not dispute this. In fact, their proposed order to preclude Dr. Parsi's testimony asked the court to order that, "Plaintiffs' expert be precluded from testifying about the causative relationship between the insertion of the Hasson trocar and William Masgai's injury to his spleen and the right posterior lateral aspect of his liver." Proposed Order attached to Motion in Limine of Defendants, 3/06/00. This covers only Dr. Parsi's second and third theories of liability: a liver injury during surgery and the failure to treat that injury. But no one ever addressed the other three alleged deviations from the standard of care listed by Dr. Parsi, namely a delay in performing surgery, inadequate replacement of blood loss and a delay in the repair of dehiscence. *See* Dr. Parsi's Report at 8. Yet inexplicably, the trial court precluded all of Dr. Parsi's report and testimony. *See* Order, 4/26/00. Appellant noted this while opposing appellees' motion for summary judgment, stating, "Dr. Parsi lists five (5) specific deviations from the standard of care in his report." Memorandum of Law in Support of Plaintiffs' Opposition to the Motion for Summary Judgment, 5/10/00, at 1.

■ ¶ 7 We hold that the trial court erred in precluding all of Dr. Parsi's testimony. While it was correct to preclude the testimony regarding whether the sur-geons damaged Decedent's liver during surgery using a Hasson trocar, appellant's other theories of liability remain viable. As a result, the court erred in granting summary judgment on those claims. Accordingly, we reverse the determination as to those three theories: delay in performing surgery, inadequate replacement of blood loss and delay in the repair of dehiscence.

■ ¶ 8 This leaves us with one final issue: whether the court properly granted summary judgment as to the issues regarding the Hasson trocar. A party may move for summary judgment

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. In reviewing an order granting summary judgment, we view the facts "in the light most favorable to the non-moving party" and reverse the order "only if there has been an error of law or a clear abuse of discretion." *Ghaner v. Bindi,* 779 A.2d 585, 587 (Pa.Super.2001). As noted above, establishing the elements of a medical malpractice cause of action generally requires the plaintiff to submit the opinion of a medical expert. *Miller,* 753 A.2d at 833. Where the plaintiff fails to do so, the defendant is entitled to summary judgment unless " 'the matter ... is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of

even non professional persons.'" *Id.* (quoting *Brannan v. Lankenau Hosp.,* 490 Pa. 588, 417 A.2d 196, 201 (1980)).

¶ 9 Neither party claims that this matter was so simple as to negate the need for an expert's testimony. The issue instead is whether appellant obtained an expert in enough time to save her claim. On April 26, 2000, the trial court entered its order precluding Dr. Parsi's testimony. Appellees then moved for summary judgment on April 27, 2000. On May 10, 2000, appellant filed an answer to the motion for summary judgment and attached as an exhibit a report from Dr. I. Michael Leitman. In that report, Dr. Leitman merely restated Dr. Parsi's theory that the liver laceration occurred during surgery. Where the trial judge has already determined that a hypothesis lacks medical support, an appellant may not merely find a new expert to repeat the exact same theory. It was the medical hypothesis itself that the trial court objected to—not the identity of the expert. Moreover, appellant's new expert came late to the process since the trial court held the *Frye* hearing on April 19, 2000. Thus appellant had notice that her expert's testimony was in jeopardy at that point. She never requested a continuance, though, in order to find a new expert, and it was not until May 10, 2000 that she presented a new expert.

¶ 10 Appellant guides us to *Wolloch v. Aiken,* 756 A.2d 5 (Pa.Super.2000), *appeal granted in part,* 564 Pa. 134, 135, 764 A.2d 1051 (2000), to support her claim that a trial judge's refusal to allow a plaintiff to supplement the record after a motion for summary judgment is an abuse of discretion. We first note that there is no evidence that the trial judge looked at or refused to look at Dr. Leitman's report. More importantly, though, *Wolloch* is easily distinguishable from the present case. In *Wolloch,* the trial court used summary judgment as a sanction when the plaintiff failed to respond to discovery requests.

*Id.* at 13. Second, the plaintiff in *Wolloch* requested additional time to obtain her expert witness' report, *Id.* at 16, which appellant failed to do. *Wolloch* offers no guidance here, and we must conclude that the trial court did not err in granting summary judgment on these theories of liability.

¶ 11 Order affirmed as to the two theories of liability involving the laceration of the liver by the Hasson trocar and the failure to correct such damage. Order reversed as to the other three theories of liability: delay in performing surgery, inadequate replacement of blood loss and delay in the repair of dehiscence. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.