J-S82040-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES E. HELMICK, JR., EXECUTOR OF THE ESTATE OF LINDA L. HELMICK, DECEASED, AND JAMES HELMICK IN HIS OWN RIGHT, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| INDIANA REGIONAL MEDICAL CENTER, ARTHUR J. DEMARSICO, D.O., NANCY R. FLYNN-MCGARVIE, M.D., AND JOHN POLENTA, M.D., | : : : : : : | |
| Appellees | : | No. 1066 WDA 2017 |

Appeal from the Order July 13, 2017,
in the Court of Common Pleas of Indiana County,
Civil Division at No(s): 10156 C.D. 2014

BEFORE:    BENDER, P.J.E., STEVENS, P.J.E.,* and STRASSBURGER, J.**

MEMORANDUM BY STRASSBURGER, J.:                FILED: March 1, 2018

James E. Helmick, Jr., as Executor of the Estate of Linda L. Helmick

(Linda), and James Helmick in his own right (collectively, Helmick), appeals

from the order entered on July 13, 2017, which made final the order granting

summary judgment in favor of Dr. Arthur J. DeMarsico.[1]  We affirm.

---

[1] On June 16, 2017, the trial court entered an order granting summary judgment in favor of Dr. DeMarsico.  Helmick timely filed an application for determination of finality pursuant to Pa.R.A.P. 341(c), which provides as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but

* Former Justice specially assigned to the Superior Court.
**Retired Senior Judge assigned to the Superior Court.

On June 14, 2011, Linda sought emergency treatment at the Indiana Regional Medical Center (IRMC) for severe leg pain. She was seen by Dr. Michael Merrell, an emergency room physician. He evaluated and released her with a prescription for pain medication and instructed she follow up with her doctor if needed.

Linda saw her primary care physician, Dr. Joseph Lamantia, the following day, reporting numbness in her left foot and other issues. Dr. Lamantia ordered tests, prescribed medication, and instructed Linda to return in two weeks. The following day, Linda returned to the IRMC emergency room, as she was in more pain and allegedly unable to walk. She was seen by Dr. Nancy R. Flynn-McGarvie. After an examination, Dr. Flynn-McGarvie prescribed pain medication and released Linda.

Linda returned the following day to the IRMC emergency room reporting increased pain. She was seen by Dr. John Polenta, who began an intravenous infusion of pain medication. Dr. Polenta consulted via phone with Dr. DeMarsico, a vascular surgeon, that evening. Dr. Polenta placed the following note in Linda's chart: "Discussed case with on-call physician Dr. DR (*sic*)

---

fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.

Pa.R.A.P. 341(c). On July 13, 2017, the trial court granted Helmick's motion. Thus, this appeal is properly before us.

DeMarsico start PLETAL 100[.]"[2] Complaint, 8/31/2013, at ¶ 59.  Linda was then discharged from the IRMC.

Linda returned to the IRMC emergency room the following afternoon with severe pain.  Upon evaluation, it was determined that Linda needed emergency vascular intervention.  She was transferred to UPMC Shadyside Hospital in Pittsburgh, where she was diagnosed with a "complete occlusion of all three tibial arteries in the left leg, as well as a calcification and free floating thrombus (clot) in the distal aorta, which was felt to be responsible for the left leg's arterial embolic event." *Id*. at ¶ 70.  Despite intervention, Linda developed gangrene in her foot, and on June 22, 2011, Linda's leg was amputated below the knee.

On August 31, 2013, Helmick[3] filed a medical malpractice complaint in the Court of Common Pleas of Allegheny County[4] against IRMC, Dr. DeMarsico, and several other doctors, alleging all deviated from the standard of care or increased Linda's risk of harm, which resulted in the amputation of her leg. With respect to Dr. DeMarsico, Helmick claims "[h]e … should have been aware

---

[2] PLETAL is "an FDA approved drug for patients that have claudication," otherwise known as a limp. N.T., 12/2/2015, at 47.

[3] Linda died on July 14, 2016, during the pendency of this litigation.  Thus, her husband, as executor of her estate, was substituted as plaintiff.

[4] On September 25, 2013, the parties stipulated to transfer of venue to Indiana County.

that Linda [] had signs of an acute arterial occlusion, which would require prompt intervention." *Id*. at ¶ 117. Helmick avers that Dr. DeMarsico should have evaluated Linda in person or advised that she be transported to another facility.

After filing preliminary objections, Dr. DeMarsico eventually filed an answer and new matter on September 4, 2014. On February 12, 2015, Dr. DeMarsico requested that Helmick file an expert report. In December 2015, Helmick took Dr. DeMarsico's deposition.[5] At that time, Dr. DeMarsico requested Helmick respond to expert interrogatories. Helmick did not respond, and Dr. DeMarsico followed up with a letter to Helmick in July 2016 again making this request.

On August 26, 2016, Dr. DeMarsico filed a motion to compel answers to expert interrogatories. Counsel for Helmick failed to appear for argument, and on October 12, 2016, the motion was granted. Helmick was given until

---

[5] In that deposition, Dr. DeMarsico explained that because IRMC does not have a vascular surgeon on staff, he travels from Altoona to Indiana one to two times per month to see patients. In that capacity, he would perform minimally invasive endovascular procedures when needed. He saw Linda in this setting in July and August of 2010. Then, on June 17, 2011, Dr. DeMarsico received a call from Dr. Polenta about a female emergency room patient. Dr. DeMarsico did not document the conversation, but recalled having a short dialogue about that patient. Although Dr. Polenta asked about PLETAL, Dr. DeMarsico stated that he did not prescribe it because (1) he did not have enough information about the patient as he did not examine her, and (2) he is neither an on-call doctor for the IRMC nor does he see patients there with acute medical problems.

November 28, 2016, to comply with this discovery request. Helmick did not comply.

On May 5, 2017, Dr. DeMarsico filed a motion for summary judgment. In that motion, Dr. DeMarsico argued, *inter alia*, that "despite efforts on the part of Dr. DeMarsico to force [Helmick] to provide evidence that they can establish *prima faci[e]* case, and despite an [o]rder of [c]ourt setting the deadline for production of [Helmick's] expert report against Dr. DeMarsico, no such report has been forthcoming." Motion for Summary Judgment, 5/5/2017, at ¶ 2. Thus, Dr. DeMarsico requested summary judgment be granted in his favor.

Helmick filed a response, arguing that the reason they could not provide an expert report was because of purportedly contradictory information provided by Dr. DeMarsico. According to Helmick, in his September 14, 2014 answer and new matter, Dr. DeMarsico "fail[ed] to make specific denials to allegations of identity, employment or control," which resulted in judicial admissions.[6] Response, 6/2/2017, at ¶ 4. Helmick suggests that in his

---

[6] Pa.R.C.P. 1029(e)(1) governs the effect of failure to deny averments in a complaint and provides the following.

> (e) In an action seeking monetary relief for bodily injury, death or property damage, averments in a pleading to which a responsive pleading is required may be denied generally except the following averments of fact which must be denied specifically:
>
> > (1) averments relating to the identity of the person by whom a material act was committed, the agency or

- 5 -

December 2, 2015 deposition testimony, Dr. DeMarsico reversed these purported judicial admissions, resulting in Helmick's being unable to produce a report. *Id*. at ¶ 12. In addition, Helmick requested additional time to file an expert report. On June 16, 2017, the trial court granted summary judgment in favor of Dr. DeMarsico. The trial court concluded that summary judgment was proper because

> [Helmick has] had nearly two years to obtain an expert report or alternatively[,] to review the discrepancies they now complain of in [Dr.] DeMarsico's deposition and inform this [c]ourt of any resulting difficulties. Instead, even having been afforded multiple extensions, [Helmick] repeatedly failed to meet deadlines for obtaining an expert witness without explanation nor any prior attempt to bring this to the [c]ourt's attention.

Trial Court Opinion, 9/6/2017, at 4. In addition, the trial court concluded that the items which Helmick claims are admissions "did not fall within the categories under Rule 1029(e)(1) for which a specific denial is required." *Id*. at 3. Therefore, the trial court rejected Helmick's position that Dr. "DeMarsico's responses are preventing them from obtaining an expert report." *Id*.

Helmick timely filed a notice of appeal, and both Helmick and the trial court complied with Pa.R.A.P. 1925. On appeal, Helmick argues that (1) the

---

employment of such person and the ownership, possession or control of the property or instrumentality involved;

Pa.R.C.P. 1029(e)(1).

trial court erred in concluding that the failure to deny specifically certain allegations were judicial admissions; and (2) that the trial court erred in not striking the portions of Dr. DeMarsico's deposition testimony that were contrary to these judicial admissions.

Before we consider these issues, we begin with our standard of review in cases involving summary judgment for failure to file an expert report in medical malpractice cases.

A party may move for summary judgment

(1)     whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2)     if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.   In reviewing an order granting summary judgment, we view the facts in the light most favorable to the non-moving party and reverse the order only if there has been an error of law or a clear abuse of discretion. … [E]stablishing the elements of a medical malpractice cause of action generally requires the plaintiff to submit the opinion of a medical expert. Where the plaintiff fails to do so, the defendant is entitled to summary judgment unless the matter … is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons.

*Masgai v. Franklin*, 787 A.2d 982, 987–88 (Pa. Super. 2001) (internal citations and quotation marks omitted). "Where a plaintiff fails to produce an

expert in a situation requiring one, the court should grant a defendant's motion for summary judgment." *Id*. at 985.

Here, Helmick does not dispute that he needs an expert report to establish a *prima facie* case, but contends that his failure to produce one is the fault of Dr. DeMarsico due to conflicts between his September 14, 2014 answer and deposition testimony. Helmick's argument is belied by the record. Even if the trial court were to conclude that Dr. DeMarsico's general denials constituted admissions,[7] Helmick would still have to produce an expert report. Helmick has not done so. Moreover, if these alleged discrepancies were actually the reasons Helmick could not produce an expert report, there was no reason to wait until the filing of a motion for summary judgment to bring this to the court's attention. Thus, because Helmick failed to produce an

---

[7] According to Helmick, Dr. DeMarsico tried to deny in his deposition that Linda was his patient, even though he "admitted" this in his answer. Helmick's Brief at 20. Our review of Dr. DeMarsico's deposition testimony, as outlined *supra*, reveals that Dr. DeMarsico simply was explaining the nature of his relationship with Linda. Helmick also claims that Dr. DeMarsico "admitted" he was an on-call physician in his answer, then claimed in his deposition testimony that he was not. *Id*. at 21. Again, we conclude that Dr. DeMarsico's deposition testimony explains the nature of his relationship to IRMC. Finally, Helmick claims that Dr. DeMarsico "admitted" that he prescribed Pletal and concurred with Linda's discharge. *Id*. at 23-24. Again, Dr. DeMarsico's deposition testimony explains his understanding of the conversation between him and Dr. Polenta. We are hard pressed to see how these purported discrepancies prevented Helmick from obtaining an expert for two years.

expert report where one was required,[8] we conclude that the trial court did not err in granting summary judgment. *See Masgai*, 787 A.2d at 988.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/1/2018

---

[8] Moreover, Helmick's emergency medicine expert, Dr. Michael B. Stone, appears to explain why Helmick is having difficulty obtaining an expert report with respect to Dr. DeMarsico. In Dr. Stone's report, he states: "While consultation with a vascular surgeon was clearly indicated in this case, the available documentation suggests that the emergency nature of [Linda's] condition was neither recognized by Dr. Polenta **nor communicated to Dr. DeMarsico**." Helmick's Pre-trial Statement, Report of Dr. Michael B. Stone, at 4 (emphasis added).