J-S39011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF:  K.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  L.W. | No. 1219 WDA 2016 |

Appeal from the Order July 14, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s): CP-11-DP-0000120-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 23, 2017**

L.W. (Mother) appeals from the order, dated July 14, 2016, and entered on July 15, 2016, that adjudicated K.S. (Child), born in June of 2016, a dependent child and set the goal for Child as adoption.  After review, we affirm.

The July 14, 2016 order was issued by the court after a hearing was held on July 11, 2016, in response to the dependency petition filed by Cambria County Children and Youth Services (CYS).  In its opinion, the court set forth an abbreviated factual background involving this family, stating:

> L.W., [M]other, has six children in addition to [Child].  The six other children range in age from 15 years to five years.  The father of [Child], C.S., is also the father of five of the six of [Mother's] other children.  Cambria County Children and Youth Service (CYS) originally initiated services to this family on April 4, 2005 through August 26, 2009 and April 26, 2011 through November 15, 2012.  CYS indicated that throughout these times CYS had ongoing concerns regarding lack of supervision of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

children, lack of parenting skills, defiant behaviors of the children, financial instability, and criminal issues and incarceration of father. CYS again initiated services with six of [Mother's] children on June 21, 2013. Then, between August 2013 and August 2014, all six children were removed from the custody of [Mother] and the [c]ourt further ordered that [Mother] and C.S. … would "never be a placement option" for the children. On May 13, 2016 and June 17, 2016 Involuntary Termination of Parental Rights hearings were held regarding three of the children. At the time of the dependency hearing regarding [Child], a decision had not been rendered as to the Involuntary Termination of parental rights as to the other three children.

Trial Court Opinion (TCO), 9/12/16, at 2. The court then described the testimony provided by various witnesses at the hearing and explained its reasoning for concluding that the issues raised by Mother in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal were without merit.

Specifically, in her Rule 1925(b) statement, Mother raised the following issues:

1. [CYS] failed to sustain its burden of proving [that Child] was a dependent child pursuant to 42 Pa.C.S.[] § 6301 et seq. because there is insufficient evidence on the record upon which a clear and convincing finding could be based that natural [M]other was unfit and cou[ld] not provide care for [Child].

2. The [c]ourt's finding that [Child] is a dependent child is against the weight of the evidence. [CYS] failed to produce clear and convincing evidence that [Child's] [M]other was unfit to parent her newborn child.

3. The [c]ourt's opinion that placement and permanency through adoption is the safest and least restrictive placement for [Child] was made against the weight of the evidence. At the time of this order, no aggravated circumstances existed and [Mother] was ready to parent [Child].

4. The [c]ourt's basis for its decision only reflected past events and previous conduct of [Mother]. At the time of the hearing, [CYS] did not review the cleanliness or habitability of the home, did not consider [Mother's] ongoing parental services that were not offered by the State, and removed the child prior to [Mother's] being able to take her home from the hospital.

5. [Mother] requests that the right to supplement the Matters Complained of on Appeal be granted pending receipt of the transcript.

Mother's Rule 1925(b) Statement, 8/11/16.

Upon review of Mother's brief however, we note that the Statement of Questions Involved section asserts an issue dissimilar to the ones she put forth in her Rule 1925(b) statement. Specifically, the issue as stated in Mother's brief reads as follows:

Whether the [c]ourt abused its discretion or committed an error of law when it granted the [p]etition for [d]ependency and ordered the permanency goal of adoption, without first attempting reunification under the Adoption and Safe Families Act[,] 42 U.S.C. [§] 671 *et seq*. [?]

Mother's brief at 4. However, the argument section of Mother's brief sets out two distinct arguments:

I. Whether the court either abused its discretion or committed an error of law when it granted the petition for dependency, thereby finding the child dependent[?]

II. Whether the court either abused its discretion or committed an error of law when it made the goal of K.S. adoption and not reunification, at the initial adjudication hearing, without aggravated circumstances[?]

Mother's brief at 5 and 8.

Essentially, with regard to Issue I, Mother argues that the trial court accepted CYS's evidence of Mother's past conduct to establish dependency as defined in 42 Pa.C.S. § 6302 with regard to Child.[1] She also asserts that she has not recently been provided with services by CYS and that, therefore, the agency could not present evidence that she failed to perform her parental duties. Specifically, Mother asserts it has been more than two years since services have been provided and that "with such a long period in between services, house visits, and hands on interaction, CYS cannot provide adequate testimony as to what knowledge [Mother] has gained as a parent, the appropriateness of housing conditions, or the skills she learned while not under the thumb of CYS." Mother's brief at 6. Thus, Mother

---

[1] The definition of dependency states in pertinent part:

"Dependent child." A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

contends that she has done all that she could do to ensure Child's return to her.

These arguments coincide to some extent with Mother's fourth issue as stated in her Rule 1925(b) statement, but in no way comport with her statement of the issue in her brief on page 4. Under the circumstances here, this Court could conclude that Mother has not preserved any issue for our review. However, despite the errors enumerated above, we will attempt to respond to the arguments Mother has actually presented in the argument section of her brief.

Our scope and standard of review in dependency cases is as follows:

> We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In the Interest of A.N.*, 39 A.3d 326, 330 (Pa. Super. 2012) (quoting *In re C.M.T.*, 861 A.2d 348, 351 (Pa. Super. 2004) (citations omitted)). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d 870, 872 (Pa.

Super. 2004). Moreover, "the dependency of a child is not determined 'as to' a particular person, but rather must be based upon two findings by the trial court: whether the child is currently lacking proper care and control, and whether such care and control is immediately available." *In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010).

As previously noted, the trial court discussed the testimony of various witnesses. Those witnesses included Brittney Corson, a CYS caseworker, Dennis M. Kashurba, a licensed psychologist, Martha Faust, program director and parent educator for Parents as Teachers through Beginnings, and Father. Then, based on this testimony, the court explained the reasons for finding Child dependent, stating:

> Here, the court heard testimony from Corson that Mother's house was clean in June 2016, one month before the hearing but that in the past when children lived with Mother the house was in a deplorable condition. Corson stated that she believed that Mother was able to keep her house clean in June 2016 because no children lived with [M]other. However, Mother was not able to care for children and keep a clean house at the same time. Corson stated that Mother was most likely overwhelmed by having such responsibilities at the same time. Although [Mother] alleges that the court did not consider the state of the home at the July 11, 2016 hearing, the record proves otherwise. Even more, the court considered the most recent state of the house in addition to Mother's ability over time to keep a clean and habitable house.
>
> Next, the court heard testimony from Faust who stated that she rendered services to Mother through the Parents as Teachers program. The court considered this testimony, especially that Faust met with Mother for one hour once a week and had only conducted four sessions at the time of the hearing. Though Mother did initiate these non-state services, the record

- 6 -

also reflects that Mother was receiving services through CYS for almost a decade to no avail.

Weighing the evidence regarding Mother's ability to keep a clean and habitable home (the state of her home as observed by Corson in June 2016 and the deplorable conditions that existed previously), the services that Mother was currently receiving and had received in the past, and her inability to parent over an extended period of time, together with the testimony of Corson and Kashurba who stated that Mother would never be able to parent any child, this court found that clear and convincing evidence proves that if custody of K.S. was given to Mother, proper parental care would not be immediately available. Thus, the court did not err in its consideration of the evidence of past events and conduct.

TCO at 14-15.

We agree. Based upon the law set forth above and a review of the record in this case, we conclude that the trial court did not abuse its discretion in adjudicating Child dependent and placing her in the custody of CYS. The trial court's findings are supported by the testimony and evidence presented at the hearing. Mother's arguments are generally an attack on the trial court's credibility determinations and she disregards the evidence before the court that contradicts her position regarding dependency. Thus, Mother is not entitled to relief.

Mother's second argument refers to the court's determination that set the goal for Child as adoption. This argument centers on Mother's contention that because aggravated circumstances did not exist, the court's stated goal of adoption, without attempting reunification, was in error. We disagree with Mother's position and again agree with the trial court. We rely on that portion of the opinion of the Honorable Tamara R. Bernstein of the

Court of Common Pleas of Cambria County, dated September 12, 2016.

*See* TCO at 8-13. Judge Bernstein's extensive, well-reasoned opinion properly disposes of the "goal of adoption" issue presented by Mother on appeal and we discern no abuse of discretion or error of law. Therefore, we adopt that portion of Judge Bernstein's opinion as our own.

Accordingly, for the reasons stated above, we affirm the July 14, 2016 order adjudicating Child dependent and setting the goal as adoption.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2017

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
JUVENILE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | * | Trial Court No. CP-11-DP-0000120-2016 |
| | * | |
| K.S., . | * | Superior Court No. 1219 WDA 2016 |
| | * | |
| | * | CAMBRIA CO CYS JUV DIV |
| Appeal of L.W., Natural Parent | * | 2016 SEP 12 AM 10:24 |

# RULE OF APPELLATE PROCEDURE 1925 (a)(2)

# OPINION

<u>Bernstein, J.</u>: L.W., the appellant herein, is the natural parent of K.S.[1] who was determined to be a dependent child on July 14, 2016, at which time she was placed into the legal and physical custody of Cambria County Children and Youth Services and into Kinship Foster Care. The court also ordered that the goal be set as Adoption.[2]

On August 11, 2016, Appellant filed a timely Notice of Appeal and Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rules of Appellate Procedure 905(a)(2) and 1925(a)(1). Pa.R.A.P. 905, 1925 (West 2016). Appellants' Concise Statement lists three matters complained of on appeal that raise these three allegations of error:

1. Did the Court err by finding that Cambria County Children and Youth Services sustained its burden of proving that K.S. was a dependent child as her mother is unfit to parent the newborn child?

---

[1] Since the subject of this appeal is a juvenile the primary parties will be referred to by their initials to provide confidentiality.

2. Did the Court err in finding that placement and permanency through adoption is the safest and least restrictive placement for K.S.?

3. Did the Court err by basing its decision only on past events and previous conduct of mother?

For the reasons discussed below the appeal should be dismissed and the Court's Order affirmed.

# FACTUAL BACKGROUND[3]

L.W., mother, has six children in addition to K.S.. The six other children range in age from 15 years to five years. The father of K.S., C.S., is also the father of five of the six of L.W.'s other children. Cambria County Children and Youth Service (CYS) originally initiated services to this family on April 4, 2005 through August 26, 2009 and April 26, 2011 through November 15, 2012. CYS indicated that throughout these times CYS had ongoing concerns regarding lack of supervision of the children, lack of parenting skills, defiant behaviors of the children, financial instability, and criminal issues and incarceration of father. CYS again initiated services with six of L.W.'s children on June 21, 2013. Then, between August 2013 and August 2014, all six children were removed from the custody of L.W. and the Court further ordered that L.W. and C.S., Father, would "never be a placement option" for the children. On May 13, 2016 and June 17, 2016 Involuntary Termination of Parental Rights hearings were held regarding three of the children. At the time of the dependency hearing regarding K.S., a decision had not been rendered as to the Involuntary Termination of parental rights as to the other three children.

---

[2] Although the parties and the court stated at hearing and in the order that a goal change to Adoption was recommended or appropriate, such was a mistake as there had been no previous goal with regard to K.S. Rather, CYS recommended, and the court ordered, that the initial goal be set as Adoption.

At the hearing on July 11, 2016, CYS Caseworker Brittney Corson (Corson) testified that during the extended periods that CYS had been providing services to L.W. and C.S. there had been short periods of time when there was improvement, but only during intensive in-home services. After the cessation of those intensive services, the situation declined and reverted to just as it had been before the services were provided, which included lack of supervision, lack of parenting skills, financial instability, and incarceration of father C.S. In the past, CYS attempted to provide services regarding financial instability, but to no avail. Presently, mother's financial situation has not improved and she receives only a limited income to include cash assistance from the Welfare Department and food stamps. Mother has stated that she is disabled and has not been employed since 2009, but does not receive any benefits or income stemming from her disability. Although there had been reports that mother's house was unclean in 2014, Corson testified that when she visited mother's home in June 2016, where mother then resided alone, Corson found it to be clean.

At the time of the hearing, father testified via video from SCI Huntingdon where he was incarcerated as he had frequently been during CYS's involvement with the family. Father testified that his failure to parent in the past was, in large part, based on his addiction which he now claims to have overcome. Father was not presently employed as he was incarcerated, but stated that upon his scheduled release on July 30, 2016 he planned to obtain legal employment. Father's current incarceration was for a probation violation based upon new drug charges which have not yet been disposed of.

Dennis M. Kashurba (Kashurba), a licensed psychologist, testified at hearing that he evaluated mother in 2006 and March 2008 and has been involved with her over the past eight

years as a member of the treatment team at Independent Family Services. Kashurba testified that although he evaluated mother almost a decade ago, he would not need to conduct another evaluation as the evaluation combined with mother's extensive history is more than enough to form his opinion. Kashurba ultimately opined that mother will never be able to parent her children and that mother could never appropriately independently parent *any* of her children, let alone all of her children.

Finally, Martha Faust (Faust), Program Director and Parent Educator for Parents as Teachers through Beginnings, testified that on May 3, 2016, mother initiated sessions with the organization and completed four in-home sessions. These sessions occurred for one hour once a week. Faust stated that the program aimed to teach parents about health, nutrition, safety, discipline, other parenting behaviors, and family well-being.

At the conclusion of testimony the court entered an order adjudicating K.S. dependent as to both parents, and placing her in the care and custody Cambria County Children and Youth Services. The Court further ordered that K.S. be placed in Kinship Foster Care and that the initial goal be set as Adoption.

# DISCUSSION

I. **Did the Court err in its determination that Cambria County Children and Youth Services sustained its burden of proving that K.S. was a dependent child as her mother is unfit to parent the newborn child?**

Appellant's first allegation of error is that the Court erred in determining that K.S. was a dependent child. In order to support an adjudication of dependency, the Juvenile Act does not require proof that the parent has committed or condoned abuse, but merely evidence that the child is without proper parental care. *In re: R.R.*, 455 Pa. Super. 1, 686 A.2d 1316, 1317–18 (1996).

To adjudicate a child dependent due to lack of parental care, a trial court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S. § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re: C.R.S., 696 A.2d 840, 843 (Pa.Super. 1997) (citation omitted). See also, In re: A.B., 63 A.3d 345, 349 (Pa. Super. 2013).

Here the court concluded that K.S. was without proper parental care as to Mother based on the failure of the Mother to maintain a home or income adequate to pay for utilities, rent, food, or any other items necessary to the children. Furthermore, Mother has been provided almost a decade of services by CYS, but has continually failed to parent her other children or show any signs of improvement in her parenting skills. The Court found that K.S. was without parental care from Father as Father was incarcerated at the time of the hearing and had been frequently incarcerated during the past decade during which CYS attempted to render services to the family. Testimony also showed that, although Father was to be released from prison on July 30, 2016, he again had additional criminal charges pending.

It is well settled that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Simmons, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). This principal applies equally where a judge sits as fact finder. Commonwealth v. Davis, 491 Pa.

363, 372, 421 A.2d 179, 183 (1980). When reviewing for sufficiency or weight of the evidence, a court may not substitute its judgment for that of the fact-finder; if the record contains support for the verdict, it may not be disturbed. Commonwealth v. Murdick, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). A court may not reverse the fact finders determination unless it is "so contrary to evidence as to shock one's sense of justice." Simmons, 541 Pa. at 229, 662 A.2d at 630. Where the court is sitting as fact finder a challenge to the weight of the evidence requires a showing of an abuse of discretion.

In reviewing a decision for abuse of discretion, appellate courts are bound by the facts as found by the trial court unless they are not supported in the record. In re: A.P., 728 A.2d 375, 378 (Pa. Super. 1999) (citation omitted). Further, our Superior Court has consistently held that

> Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

In re: E.P., J.P. & A.P., 841 A.2d 128, 131 (Pa. Super. 2003) (quoting In re: R.W.J., 826 A.2d 10, 12 (Pa. Super. 2003)). An abuse of discretion is not merely an error in judgment but exists only when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, or where the court has failed to apply the law or was motivated by partiality, prejudice, bias, or ill will. Harman v. Borah, 562 Pa. 455, 756 A.2d 1116 (2000). See also, Van Dine v. Gyuriska, 552 Pa. 122, 713 A.2d 1104 (1998); Rebert v. Rebert, 757 A.2d 981 (Pa. Super. 2000).

For a decision to be against the weight of the evidence it must be shown that the evidence relied on to reach the decision was so inherently improbable or at variance with the

admitted or proven facts, or with ordinary experience, that it resulted in a decision that is shocking to the court's sense of justice. Thomas v. E.B. Jermyn Lodge No. 2, 693 A.2d 974 (Pa. Super. 1997). While an appellate court will review the evidence, determinations pertaining to the credibility of witnesses and the weight to assign evidence are matters within exclusive province of the fact finder and may not be disturbed by the appellate court. See, Weir by Gasper v. Estate of Ciao, 551 Pa. 491, 556 A.2d 819 (1989).

Here, the evidence supports the finding that both Mother and Father were unfit to parent K.S. and, as a result, K.S. was without proper parental control, subsistence, or other control necessary for her physical, mental, emotional health, or morals. First, Mother testified that she had minimal income and, since she is disabled, she is unable to obtain employment. Next, Corson testified that Mother had been receiving services for almost a decade and, although there were periodic improvements, Mother could never sustain these improvements after services ceased. These problems manifested themselves in that Mother's other six children had been previously removed from her home. Corson did testify that in June 2016 she had a chance to see Mother's housing and it was clean, but Corson attributed this to the fact that Mother was currently living alone as opposed to the past when Mother had custody of her other children and lived in deplorable and dirty conditions.

Importantly, Kashurba testified that it was his professional opinion that Mother "will never be able to appropriately parent on an independent basis any child." N.T. 7/11/2016 pp. 15-24. Kashurba initially evaluated Mother in 2006 and then again in 2008. Although these evaluations took place between eight and ten years ago, Kashurba has been involved in the intervening years when he participated in her treatment team meetings with Independent Family Services. Ultimately, Kashurba stated that a new psychological evaluation would not

prove useful as he is familiar with Mother and her history and opined based upon such complete knowledge. Thus, K.S. is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. Accordingly, there is no merit to this allegation of error.

**II.    Did the Court err in finding that placement and permanency through adoption is the safest and least restrictive placement for K.S.?**

Appellants' second allegation of error is that the Court erred in finding that placement and permanency through adoption is the safest and least restrictive placement for K.S. and the Appellant further asserts that no aggravated circumstance existed at that time. Pennsylvania Rule of Juvenile Court Procedure (Pa.R.J.C.P) No. 1512 requires that, "The court shall state on the record in open court or enter into the record through the dispositional order, findings pursuant to Rule 1514, if the child is placed." Pa.R.J.C.P. No. 1514 further requires that,

Prior to entering a dispositional order removing a child from the home, the court shall state on the record in open court the following specific findings:

(1) Continuation of the child in the home would be contrary to the welfare, safety, or health of the child;

(2) The child's placement is the least restrictive placement that meets the needs of the child, supported by reasons why there is no less restrictive alternative available;

(3) If the child has a sibling who is subject to removal from the home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling;

(4) The county agency has reasonably satisfied the requirements of Rule 1149 regarding family finding; and

(5) One of the following:

> (a) Reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from the home, if the child has remained in the home pending such disposition; or

> (b) If preventive services were not offered due to the necessity for emergency placement, whether such lack of services was reasonable under the circumstances; or

> (c) If the court previously determined that reasonable efforts were not made to prevent the initial removal of the child from the home, whether reasonable efforts are under way to make it possible for the child to return home.

Pa.R.J.C.P. No. 1514. Furthermore, where the court has "previously found aggravated circumstances to exist and that reasonable efforts to remove the child from the home or to preserve and reunify the family are not required, a finding under paragraphs (A)(5)(a) through (c) is not necessary." Pa.R.J.C.P. No.1514(B). Thus, the court is required to state specific findings as to each element at Pa.R.J.C.P(A)(1)-(4). However, at Pa.R.J.C.P.(A)(5), the court is required to render a finding specific to only one of the three sub-sections at Pa.R.J.C.P.(A)(5)(a)-(c). The existence of an aggravated circumstance is not required prior to the court's entering of an order removing the child from the home. Rather, if there is a previous finding of aggravated circumstances, then the court need not making a finding as to

one of the three sections at Pa.R.J.C.P.(A)(5)(a)-(c). The finding of an aggravated circumstance essentially replaces or does away with the requirement that a finding as to one of the three sub-sections, (a)-(c) be made.

Examining Appellant's matters complained of on appeal contained in the Concise Statement in light of Pa.R.J.C.P. No. 1514, it is evident that Appellant takes issue with the court's findings as to Pa.R.J.C.P. No.1514(A)(1), (2), and (5). Preliminarily, the court agrees that no aggravated circumstance existed at the time of the disposition hearing on July 11, 2016. However, such an absence is not evidence of error as will be discussed *infra*. The Superior Court of Pennsylvania has importantly noted that, "a hearing court is given broad discretion in meeting the goal of entering a disposition 'best suited to the protection and physical, mental, and moral welfare of the child.'" *In Re S.M.*, 418 Pa. Super. 359, 365 (1992) (quoting *In Re Lowry*, 484 A.2d 383 (1984)). The Superior Court has also held that, "A child who has been adjudicated dependent may not be separated from its parents unless the evidence presented establishes that such a separation is 'clearly necessary.' Furthermore, 'clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with (his or her) family are unfeasible.'" *In re K. B.*, supra, 276 Pa.Super. 380, 393, 419 A.2d 508, 515 (1980).

First, the court must find that "Continuation of the child in the home would be contrary to the welfare, safety, or health of the child." Pa.R.J.C.P. No. 1515(A)(1). Here, substantial evidence exists supporting the court's finding. Specifically, Corson testified that Mother, with the benefit of almost ten years of services, has never been able to display adequate parenting skills. For example, on December 12, 2013 another of Mother's children was placed after a child in Mother's care was injured in the home due to a lack of supervision.

Furthermore, Kashurba testified that Mother "will never be able to parent on an independent basis any child." N.T. 7/11/16 pp. 15-24.

Testimony from Corson and a review of the records submitted by CYS on July 7, 2016 also indicate that Mother has struggled to financially support her children in the past, struggles to support herself, and would struggle to support K.S. in her home. Corson testified that Mother receives cash assistance from the Department of Welfare and Section 8 housing. N.T. 7/11/16 pp.6-7. Although Mother told Corson that she was up to date on all of her bills, Corson had the chance to examine such bills on June 17, 2016 and stated that Mother did owe back payments on some bills. *Id.* at 8-15. Corson also stated that her most recent visit to mother's housing revealed a relatively clean home, but this was a stark contrast to the "deplorable" conditions that Corson had witnessed in the past. N.T. 7/11/16 pp. 4-12. Corson attributed this recent cleanliness to the fact that Mother did not have any children living with her and recalled that in 2014 when the home was "very dirty and cluttered" the children had been living with Mother. *Id.* at 6-20.

Next, at the time of the hearing on July 11, Father was incarcerated as a result of a probation violation resulting from new drug-related charges. Records submitted by CYS indicate that Father had been incarcerated for the duration of CYS's involvement with the family, which began in 2005. Father was released from prison on parole on August 15, 2015, but was again arrested just six months later when new charges of drug possession and drug possession with the intent to deliver, in addition to other charges, were filed. Although Father did testify that his incarcerations were a result of a drug addiction that he has now overcome, his extended criminal history and past incarceration, in addition to his most recent arrest, show that Father has not parented his children in the past and, as a result of his current

incarceration, would not be able to parent K.S. Thus, due to Mother's lack of parenting skills, lack of financial stability and responsibility, and Father's lengthy and ongoing incarceration, placement of K.S. in the home with Mother would clearly be contrary to the child's welfare, safety, and health.

Next, the court satisfied Pa.R.J.C.P. No. 1514(A)(2) by placing K.S. in the least restrictive placement and there were no less restrictive alternatives available. Specifically, the court ordered that "The Child is to be placed, by the Agency, in Kinship Foster Care. The Child's placement is the least restrictive placement that meets the needs of the Child and there is no less [restrictive alternative]." ORDER OF ADJUDICATION AND DISPOSITION DATED JULY 14, 2016. As discussed *supra*, the court deemed that both Mother and Father are unfit to parent K.S. despite having been offered all resources and services available through CYS. Thus, placement in Kinship Foster Care is clearly the least restrictive alternative as the parents are no longer an option for placement.

Finally, pursuant to P.A.R.J.C.P. No. 1415(A)(5)(b) the court found that,

> To allow this child to remain in the home would be contrary to the child's welfare, and that Preventative services were not offered due to the necessity for emergency placement. The lack of services was reasonable under the circumstances. This level of effort was reasonable due to the emergency nature of the situation, safety considerations, and circumstances of the family.

ORDER OF ADJUDICATION AND DISPOSITION DATED JULY 14, 2016. The lack of preventative services offered was reasonable here as Mother and Father had been availed of such services throughout the course of a ten-year period. No significant or

lasting improvement resulted. Additionally, Kashurba, who is familiar with mother and her situation, unequivocally stated that Mother would never be able to parent any child, and, since Father was still incarcerated, rendering services to him would be of no effect since he could not parent K.S. from prison. Emergency placement was required immediately after K.S. left the hospital as it was clear that allowing the child to go home with Mother would be contrary to the child's health, safety, and welfare even if services were initiated as to Mother in regard to K.S. As such, the court satisfied Pa.R.J.C.P. No. 1514(A)(5)(b) by finding that emergency placement was necessary and preventative services were not rendered as a result.

Accordingly, the court satisfied all statutory requirements as to dispositional findings prior to issuing its order removing K.S. from the home, placing her in Kinship Foster Care, and setting the initial goal as Adoption. Any services that would have allowed K.S. to remain in the home were unfeasible and would have been ineffective, making the removal clearly necessary. Thus, there is no merit to this allegation of error.

III. **Did the Court err by basing its decision only on past events and previous conduct of mother?**

Appellant's third and final allegation or error is that the court erred by only considering past events and conduct. Furthermore, Appellant alleges that CYS did not review the home and that the court failed to consider Mother's ongoing parental services. First, in making a determination as to whether a child is dependent, the "court must ascertain not only what sort of parental care the child received in the past, but also what sort of parental care the child will receive if custody is given to the parents." *In Re* Ryan Michael C., 294 Pa. Super 417, 420 (1982). Ultimately, the court must conclude by clear and convincing evidence "that

proper parental care is not immediately available" to adjudicate the child dependent. *Id.* The proper course for a court to take is to examine past events and conduct and then, based on these and other pieces of evidence, determine whether proper parental care is immediately available to the child.

Here, the court heard testimony from Corson that Mother's house was clean in June 2016, one month before the hearing, but that in the past when children lived with Mother the house was in a deplorable condition. N.T. 7/11/2016 pp. 6-20. Corson stated that she believed that Mother was able to keep her house clean in June 2016 because no children lived with mother. However, Mother was not able to care for children and keep a clean house at the same time. Corson stated that Mother was most likely overwhelmed by having such responsibilities at the same time. Although Appellant alleges that the court did not consider the state of the home at the July 11, 2016 hearing, the record proves otherwise. Even more, the court considered the most recent state of the house in addition to Mother's ability over time to keep a clean and habitable house.

Next, the court heard testimony from Faust who stated that she rendered services to Mother through the Parents as Teachers program. *Id.* at 8-12. The court considered this testimony, especially that Faust met with Mother for one hour once a week and had only conducted four sessions at the time of the hearing. *Id.* at 21-1. Though Mother did initiate these non-state services, the record also reflects that Mother was receiving services through CYS for almost a decade to no avail.

Weighing the evidence regarding Mother's ability to keep a clean and habitable home (the state of her home as observed by Corson in June 2016 and the deplorable conditions that existed previously), the services that Mother was currently receiving and had received in the

past, and her inability to parent over an extended period of time, together with the testimony of Corson and Kashurba who stated that Mother would never be able to parent any child, this court found that clear and convincing evidence proves that if custody of K.S. was given to Mother, proper parental care would not be immediately available. Thus, the court did not err in its consideration of the evidence of past events and conduct.

As there is no merit to any allegation of error and for the reasons discussed herein, the appeal should be dismissed and the Court's Order of July 11, 2016, affirmed.

RESPECTFULLY SUBMITTED,

Tamara R. Bernstein, Judge

September 9, 2016